## NORTON v. DERRY NATIONAL BANK.

National banks organized under the national banking act of June 3,
    1864, have no legal power to guarantee a contract between other per-
    sons for the delivery of building materials, and an action against a
    bank, upon such a guaranty made by an officer of the bank, cannot be
    maintained.

If the bank has received a benefit from the contract of guaranty, a recovery to that extent may be had on an appropriate count in the declaration.

ASSUMPSIT, upon a written guaranty. The plaintiff conveyed to Mead, at the request of Lamprey, six lots of land with a house upon each, and Mead gave his six promissory notes payable to Lamprey or order, and executed to Lamprey six mortgages, one of each lot, and each to secure one note. At the same time Lamprey made a written contract with the plaintiff to deliver to him within a specified time certain quantities of brick, lime, cement, and lumber at prices amounting in the aggregate to the amount of Mead's notes. This contract was the consideration for the conveyance of the land, and was guaranteed in writing by the defendants' cashier in the name of the bank. Lamprey, at the time, also produced from the cashier, as clerk of the bank, a certificate of a vote of the directors authorizing the guaranty, and the book in which were recorded the directors' proceedings contained a record of such a vote signed by the clerk. The cashier had no authority to make the guaranty, and no such vote of the directors as was recorded and certified was ever made, and none of the directors knew of the guaranty until after Lamprey's failure to perform his contract, and the defendants had been called upon to fulfil the guaranty. Lamprey was insolvent, and the plaintiff required a responsible guarantor, believed the record of the vote and the certificate were true, that the cashier had authority to make the guaranty, and relied upon it as security for the performance of the contract. At the time the conveyance was made Lamprey had overdrawn his account at the bank, to which he gave his own note and pledged one of the mortgage notes of the same amount to secure it, and assigned the mortgage to the bank. The bank discounted his note, and balanced his account by crediting him with the amount of his overdraft, and paid the remainder of the avails of his note to another creditor of Lamprey's on his order. Lamprey not paying his note, the bank procured from Mead a quitclaim deed of the lot of land described in the mortgage. Neither the contract nor the guaranty was under seal. Both parties claim judgment.

*Wiggin & Fuller*, for the plaintiff. It was the duty of the defendants' clerk to record, and he did record, the proceedings of the directors. His record of what purported to be a vote, and his attested certificate of the record, were within the scope of his powers. The plaintiff acted in good faith, relying upon the record, believing it to be true, and the defendants are estopped from showing the falsity of a record or certificate made by their agent duly authorized to record their proceedings and certify copies of the record. If one of two innocent persons must suffer from the fraud of

a third, the loss must fall upon the one who has put it in the power of the third person to commit the fraud. *Merchants' Bank* v. *State Bank,* 10 Wall. 604; *Case* v. *Bank,* 100 U. S. 446.

The defendants cannot set up the claim of *ultra vires* against the guaranty. To secure the overdraft of Lamprey, the defendants received one of the mortgages, and acquired full title to the land by the subsequent quitclaim deed from the mortgagor. The mortgage was the consideration for the guaranty. The guaranty, in fact, was given for the land, and the defendants cannot retain the benefits derived from the contract and at the same time repudiate it. *First National Bank* v. *National Exchange Bank,* 92 U. S. 122; *Mining Co.* v. *Bank,* 96 U. S. 640; *Bank* v. *Matthews,* 98 U. S. 621; *Bank* v. *Case,* 99 U. S. 628; *Bank* v. *Graham,* 100 U. S. 699; *Bradley* v. *Ballard,* 55 Ill. 413; *Casey* v. *Credit Mobilier,* 2 Woods 77; Green Bri. Ultra Vires 729, *n. a.;* Field Ultra Vires, *c.* 4, *p.* 168. The guaranty was made for the purpose of securing and collecting a debt due the defendant, and it was legitimate to make it for that purpose.

*G. C. & G. K. Bartlett,* for the defendants. This action is not a suit for the redemption of the mortgage, nor for the recovery of the note and mortgage from the defendants. The defendants did not make the contract declared upon, nor has it ever been ratified by the defendants and their officers, and the defendants are not estopped from denying their power to make such a contract. No power to make the contract is given by the national banking act. U. S. Rev. Sts., *ss.* 5136, 5137. The bank is a creature of the statute, and has no other powers than those enumerated there, or such as are incidental or necessary to carry into effect the purposes for which the bank was established. *Downing* v. *Mt. Washington Road,* 40 N. H. 230, 236, and cases cited; Morse Banks and Banking 5, 6, 9. The powers and duties of the bank being prescribed by statute, the plaintiff is presumed to have known that the defendants' officers had no legal power to make or authorize the guaranty, and he could not be misled by the cashier's false certificate. *Manufacturing Co.* v. *Canney,* 54 N. H. 295, 325; *Bank* v. *Globe Works,* 101 Mass. 57, 58.

ALLEN, J. The defendants' cashier had no authority to make the guaranty, and there was nothing in the acts, conduct, or course of business of the defendants' officers, by which he was held out as having authority to make it. The guaranty itself being false and a fraud upon both parties, the cashier undertook to cure one fraud by committing another, and recorded a false vote of authority to make the guaranty, and certified the false record to the plaintiff.

Had the forged record been a true one, had the directors voted as the record and certificate declared, or had they made the guar-

anty themselves, the defendants could not have been bound by their action, for a guaranty of that kind would have been beyond the scope of their powers.   The power of corporations is limited by the purposes for which they are created, and which are named in the charter or act authorizing their existence.   National banks derive their powers from what is known as the national banking law (Act of Congress, June 3, 1864, Rev. St. U. S., title, LXII), declaring that any association organized under the act shall be a body corporate, and " may exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as may be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits ; by buying and selling exchange, coin, and bullion ; by loaning money on personal security ; and by obtaining, issuing, and circulating notes · according to the provisions of this title."   Real estate may be purchased and held for immediate accommodation in the transaction of business, and received in the collection of debts, and as security for previous indebtedness.   Rev. St. U. S., *ss.* 5136, 5137. The power given by the law is to carry on the banking business, and includes such incidental powers as may be necessary to effect that object.   It is nowhere mentioned that a bank may guarantee the performance of written contracts made for other purposes than the payment of money or the transfer of securities.   If, in the course of their business, the bank find it necessary to endorse for transfer, or otherwise specially guarantee negotiable commercial paper (*People's Bank* v. *National Bank*, 101 U. S. 181), it will not be claimed that the guaranteeing of other written contracts is included within any of its powers, general or special, or is necessarily incidental.   It is no part of the business of a bank, nor necessarily incidental to it, to guarantee a building contract, or one for furnishing building materials ; and the defendants had no power to make the guaranty which is the subject of this action.

The plaintiff claims that the defendants are liable, because it was the duty of their cashier and clerk to record the votes and official acts of the directors, and the bank are bound by the false record as if it were true ; or that the plaintiff in good faith parted with her property, relying upon the strength of the record and the guaranty, and the defendants are estopped from denying the truth of the record and the validity of the guaranty.   The doctrine that principals are bound or made liable for the wrongs done by their agents or servants is confined to cases where the acts complained of, or relied on, are done in the employment of the principal as a part of the ordinary business of that employment, or are authorized or directed by the principal, or in some way ratified and adopted by him.   Acts, though done by an agent or servant, unauthorized and unratified, and not being within the scope of the employment, nor a part of the ordinary business of the principal, can-

not bind him nor make him liable; and the doctrine applies with special force to corporations, the business of which can be carried on only through the medium of agents. A. & A. Corp., ss. 310, 311; Ad. Torts, s. 1197; *Martin* v. *Great Falls Mfg. Co.*, 9 N. H. 51, 54; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1; *Foster* v. *Essex Bank*, 17 Mass. 479, 508; *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326; *Bank* v. *Dunn*, 6 Pet. 51; *Bank* v. *Jones*, 8 Pet. 16; *United States* v. *City Bank of Columbus*, 21 How. 356. The defendants' cashier had no authority to make the guaranty, nor was his act in making it ever ratified by the defendants. The directors, in fact, repudiated it as soon as it came to their knowledge. It was no part of the duty of the cashier to make the guaranty, nor was its making any part of the ordinary business of the bank. Nothing of the kind was shown to have ever been done before, either with or without express direction. It was not within the legalized powers of the defendants.

The fact that it was a part of the duty of the cashier to record the acts and votes of the directors, does not make his false record and certificate binding upon the bank. The cashier is not a public officer within the meaning of the term, appointed by the public to make and certify records, and whose duties are defined by law. If he was held out by the defendants as their agent to record and show the acts of their officers, the plaintiff was not relieved of the duty of making inquiry into the legality and want of authority of the acts. The doctrine, that of two innocent persons defrauded by a third. he shall suffer who has enabled a delinquent to commit the fraud, has no application here, where the act constituting the fraud was no part of the cashier's duty nor the defendants' legitimate business, and where the plaintiff neglected to make the necessary inquiry for ascertaining the validity of the act.

The doctrine of *ultra vires* is not usually applied where the party setting it up has received a benefit from the unempowered and unlawful act relied on as a defence. *Rich* v. *Errol*, 51 N. H. 350, 354; *West* v. *Errol*, 58 N. H. 233; *United States* v. *State Bank*, 96 U. S. 33; *Gold Mining Co.* v. *National Bank*, 96 U. S. 640; *National Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 U. S. 99. The defendants received a tract of land, which the plaintiff conveyed, relying for payment of the consideration on the guaranty of the defendants. The guaranty, the conveyance, and the pledge of the note and mortgage were parts of the same transaction, and though the land was not received directly from the plaintiff, it was the false guaranty which induced and made possible the conveyance, and which enabled the bank to collect the overdraft of Lamprey. It was a benefit received from the guaranty, and the defendants cannot be permitted to repudiate the unauthorized contract and retain the fruits of it. If the guaranty is denied, the benefit must be restored. The plaintiff cannot recover upon the guaranty. If he desires, he may amend his declaration by

adding an appropriate count for the recovery of the land, or its value if sold.

*Case discharged.*

SMITH and CARPENTER, JJ., did not sit: the others concurred.