Hillsborough-northern judicial district
No. 2006-025

MICHAEL PORTER

v.

CITY OF MANCHESTER & a.

Argued: January 18, 2007
Opinion Issued: April 5, 2007

*Backus, Meyer, Solomon & Branch, LLP*, of Manchester (*Jon Meyer* on the brief and orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert J. Meagher* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, the City of Manchester (City), appeals the Superior Court's (*Lewis*, J.) denial of its motions for summary judgment and directed verdict in a jury trial where it was held liable on a theory of respondeat superior for the tortious acts of Susan Lafond, a former welfare commissioner, against the plaintiff, Michael Porter. We affirm.

The jury could have found the following facts: The plaintiff was employed as a caseworker in the City Welfare Department (the department). Lafond hired him in 1997, and for the first few years they enjoyed a positive working relationship to the point that he campaigned for her reelection. Eventually, the plaintiff developed concerns about certain department practices and was told, "[I]t's a monarchy. If you don't like it, there's the door." After the suicide of a client, the plaintiff took a medical leave during which he contacted the City Human Resources Department to raise concerns about the department under Lafond's supervision. Lafond was informed of his complaints.

Upon his return from leave, Lafond began to retaliate. At their first meeting, she stated, "[W]e'll see how long you last." Thereafter, Lafond frequently scrutinized and criticized the plaintiff, limited his movement within the office, humiliated him in front of clients, and ignored his presence at staff meetings. For a period of time, in an attempt to control the situation, the City did not allow Lafond to work in her office. Ultimately, the City allowed her to return. Lafond then suspended the plaintiff. The suspension resulted from a dispute about a case the plaintiff had reported to the New Hampshire Division for Children, Youth and Families. The City worked with Lafond to make sure the suspension met its standards, requiring her to redraft the letter of suspension and increase the penalty from one day to one week.

The welfare commissioner, despite being elected, is a City employee and head of the department. As such, Lafond had "exclusive personnel authority" over her department. Her job description stated that "extensive leeway is granted for the exercise of independent judgment and initiative."

Lafond was "very protective" of her authority as commissioner during her long tenure at the department from 1988-2001. She had asserted her authority through prior controversies and could be punitive to staff with dissenting views. Human resources personnel testified that Lafond viewed their intervention as a threat to her authority as commissioner.

At the close of evidence, the jury was instructed on the law of respondeat superior and asked to determine whether Lafond "commit[ted] retaliatory acts which were within the scope of her employment" and whether "those retaliatory acts which were within the scope of her employment [were] sufficient to cause the constructive discharge of [the plaintiff]." The jury answered in the affirmative.

This case comes before us a second time. *See Porter v. City of Manchester*, 151 N.H. 30 (2004). In the first case, the plaintiff brought an action against the City, alleging wrongful termination, and against Lafond under 42 U.S.C. § 1983 (2000), alleging violations of his constitutional rights. *Id.* at 32. The jury ruled in favor of the plaintiff. *Id.* On appeal, we upheld the judgment against Lafond but vacated the verdict against the City after clarifying that wrongful termination sounds in tort and, therefore, the trial court erred when it failed to instruct the jury on respondeat superior. *Id.* at 40. We remanded the case for a new trial on the plaintiff's wrongful termination claim against the City on the premise that if the City were to be held liable for the actions of Lafond, it would have to be on the basis of respondeat superior. *See id.* at 39-40. In the trial court, both sides filed motions for summary judgment. These were denied and after a second trial the plaintiff again prevailed against the City. The trial court denied the City's motion for directed verdict. This appeal followed.

*I. Motion for Summary Judgment*

The City's liability, if any, depends upon whether Lafond was acting within the scope of her employment when she wrongfully terminated the plaintiff. *Id.* at 39. Under respondeat superior, "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff." *Id.* at 39-40. "Lafond's conduct falls within the scope of her employment if: (1) it is of the kind she is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." *Id.*

The City argues that the trial court erred by denying its motion for summary judgment because neither party alleged any material disputed facts that required resolution by a jury.

In acting upon a motion for summary judgment, the trial court is required to construe the pleadings, discovery and affidavits in the light most favorable to the non-moving party to determine whether the proponent has established the absence of a dispute over any material fact and the right to judgment as a matter of law. *Porter v. Coco*, 154 N.H. 353, 356 (2006). An issue of fact is material if it affects the outcome of the litigation. *Id.* In reviewing a denial of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Van Der Stok v. Van Voorhees*, 151 N.H. 679, 681 (2005). "If no genuine issue of material fact existed, and the moving party was entitled to judgment as a matter of law, then summary judgment should have been granted." *Id.*

We hold that there were disputed material facts on the record before the trial court sufficient to defeat the City's motion for summary judgment. We address each of the City's arguments in turn.

*A. Lack of Control Due to Elected Status*

The City first argues that the undisputed facts establish that it lacked the requisite control over Lafond because of her elected status, and that her elected status moved her beyond the limits of a traditional master and servant relationship, thus eliminating any liability of the City for her actions. It argues, "Simply saying Mrs. Lafond was an employee does not establish the master-servant relationship and the necessary factors to establish liability through respondeat superior." At oral argument, the City conceded that it is not arguing for a blanket rule that a municipality can never be liable for the actions of an elected employee, but that such a lack of control exists in this case.

█ To determine whether an employee-employer relationship exists we examine the totality of the circumstances, which requires consideration of many factors, including those set forth in the RESTATEMENT (SECOND) OF AGENCY § 220 (1958). *See Boissonnault v. Bristol Federated Church*, 138 N.H. 476, 478 (1994). The RESTATEMENT criteria include:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

RESTATEMENT (SECOND) OF AGENCY § 220. Considering these factors, there was sufficient dispute on the issue of control to allow it to go to the jury. On factor (a), "the extent of control which, by the agreement, the master may exercise over the details of the work," there was testimony at the first trial by a City witness that "the Mayor as the chief executive officer had the ability to tell a department head what to do; regardless if that department head was elected or appointed, the Mayor was the CEO, that's what the charter says and it still does." There was also testimony that the City could not discipline or fire Lafond. Factor (e), "whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work," is also relevant, as there was evidence that Lafond worked out of an office which the City owned. Similarly, factors (f), "the length of time for which the person is employed" and (g) "the method of payment, whether by the time or by the job," are relevant. Lafond was drawing a regular paycheck from the City for her work, and she had been in the job for more than a "short" time, RESTATEMENT (SECOND) OF AGENCY § 220 comment *j* at 490. Finally, factor (h), "whether or not the work is a part of the regular business of the employer," is relevant because Lafond's services consisted of running a City department.

Based upon at least these factors, the trial court did not err by denying the City's motion for summary judgment because there were sufficient disputed material facts, which prevented the control issue from being settled as a matter of law in the City's favor.

## B. Serving the City

The third element of the respondeat superior test asks whether the conduct "is actuated, at least in part, by a purpose to serve the employer." *Porter*, 151 N.H. at 40. Conduct not actuated at least in part by a purpose to serve the employer will be outside the scope of employment. The City argues that Lafond was not actuated to serve it, the employer, but was rather serving herself by protecting the position of welfare commissioner. *See Ennis v. Crenca*, 587 A.2d 485, 490-91 (Md. 1991) (elected official not acting within scope of employment when acting to protect political career in making allegedly defamatory statements).

It is possible for liability to exist in cases where there may be mixed motivation; *i.e.*, the servant is actuated with a purpose to serve both the master as well as other interests, *see* RESTATEMENT (SECOND) OF AGENCY § 236 (1958) ("Conduct may be within the scope of employment although done in part to serve the purposes of the servant or third person."). In this case, Lafond could have been serving the master as well as her own interests, and the law of agency would not automatically preclude liability under respondeat superior.

■ There was conflicting evidence from the first trial with regard to Lafond's motivation. The City points to testimony that Lafond bumped Porter in the hallway and threatened that her son would like to "take out" employees as indicating her motive to serve herself. The plaintiff argues that Lafond's motivation in suspending him was, among other things, to maintain the effective operation of the City's welfare office; therefore, such actions were in the service of the City. In light of this conflicting evidence from the first trial concerning Lafond's motivation, summary judgment was properly denied.

## C. Prohibition on Retaliation

■ The first element of the respondeat superior test is used to determine whether conduct is within the scope of employment. It requires that the conduct be "of the kind she is employed to perform." *Porter*, 151 N.H. at 40. The City argues that, because Lafond was told not to retaliate, her conduct could, therefore, not be "of the kind [Lafond] is employed to perform" for respondeat superior liability purposes.

Merely forbidding Lafond to take a certain action does not shelter the City from liability as a matter of law, however. "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment." RESTATEMENT (SECOND) OF AGENCY § 230 (1958); *McIntyre v. U.S.*, 447 F. Supp. 2d 54, 109-10 n.93 (D. Mass. 2006) (collecting cases). This can include "specifically forbidden acts and

forbidden means of accomplishing results." RESTATEMENT (SECOND) OF AGENCY § 230 comment *b* at 511. "A master cannot direct a servant to accomplish a result and anticipate that he will always use the means which he directs or will refrain from acts which it is natural to expect that servants may do." *Id.*

As a matter of law, then, the City's admonitions against retaliation are not sufficient to eliminate its possible liability. Summary judgment was, therefore, properly denied.

### D. Ratification of Intentional Torts

■ The City next argues that, to the extent Lafond's acts were intentional torts, the City would have to ratify them for liability to attach, and such ratification did not occur. In support of this proposition the City cites only an unpublished intermediate Ohio appellate court case interpreting Ohio law. *See Amato v. Heinika, Ltd., DBA*, No. 84479, 2005 WL 110441 (Ohio Ct. App. Jan. 20, 2005) (not reported).

The City misapprehends the relevant law. Ratification is an alternative theory of holding an employer liable for torts of an employee. "[A]n employer may be vicariously liable for the intentional tort of its employee under the doctrine of respondeat superior or directly liable under the theory of ratification." *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 614 (5th Cir. 1999) (applying Texas law); *see Norton v. Bank*, 61 N.H. 589, 592-93 (1882). Summary judgment was properly denied, therefore, because, as a matter of law, ratification is not necessary for an employer to be held liable for an intentional tort under respondeat superior; it is an alternative theory.

### E. Estoppel for Plaintiff's Retaliation and Scope of Employment Arguments

The City argues that the plaintiff was estopped as a matter of law from making arguments about Lafond's motivation and whether she was acting within the scope of employment.

■■ The City advances a judicial estoppel argument and hints at a collateral estoppel argument. The former is that the plaintiff is estopped from now arguing a contrary position with regard to Lafond's retaliation; the latter suggests a "conclusion" at the first trial that Lafond acted outside the scope of employment. The doctrine of judicial estoppel is as follows: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, it may not thereafter, simply because its interests have changed, assume a contrary position." *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 848 (2005) (quotation,

brackets and ellipsis omitted). "While the circumstances under which judicial estoppel may be invoked vary with each situation, the court considers the following three factors: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

▮ Here, the plaintiff's position was not inconsistent as a matter of law. At both trials he contended that Lafond used her supervisory authority in a tortious way to advance the City's interests. As noted above, acts that are even expressly forbidden may still be carried out within the scope of authority if Lafond's intent was to serve the master.

Because we find no contradiction in the position taken on this issue, we do not consider the remainder of the judicial estoppel inquiry. Judicial estoppel was not a reason for a grant of summary judgment to the City.

Inasmuch as the City has failed to undertake a collateral estoppel analysis, or to develop its legal argument, we decline to review it. *See Gulf Ins. Co. v. AMSCO*, 153 N.H. 28, 40 (2005). For this same reason we also decline to review the City's assertion that the trial court should have followed "the general rule, which is that a municipality is not liable for the intentional torts of its officers."

## II. Motion for Directed Verdict

The City argues that a directed verdict should have been granted by the trial court because no rational juror could conclude that the plaintiff was entitled to relief, and, therefore, the trial court committed an unsustainable exercise of discretion by not granting the motion.

▮ A trial court may grant a motion for a directed verdict only if it determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief. *Kelleher*, 152 N.H. at 840. We uphold a trial court's ruling on a motion for directed verdict when the record supports the conclusion that the trial court did not commit an unsustainable exercise of discretion. *Id.*

The City repeats its arguments that respondeat superior is inapplicable to Lafond's actions; namely, that the acts were not the kind Lafond was employed to perform and that Lafond was not motivated by a purpose to serve the City.

We hold that on the record before us the jury could have reasonably reached its conclusion on respondeat superior and the trial judge did not

err by denying the motion for a directed verdict. We address each of the City's arguments in turn.

## A. Retaliatory Actions Not of the Kind Lafond Employed to Perform

The City argues that Lafond "conceded" that the retaliatory actions were not of the kind she was employed to perform and, given this concession, no reasonable juror could have found to the contrary. As a preliminary matter, it is not clear that Lafond conceded anything; but, even if we were to take this as a concession, Lafond's subjective opinion that certain acts would have been outside of her job description is not determinative. "The question whether or not the act done is so different from the act authorized that it is not within the scope of employment is decided by the court if the answer is clearly indicated; otherwise, it is decided by the jury." RESTATEMENT (SECOND) OF AGENCY § 228 comment *d* at 505. It is for the finder of fact, then, to evaluate what is and is not within the scope of employment in terms of the retaliatory acts at issue that touch on subjective intent. *Id.*

Concerning whether Lafond's actions were of the kind the employee is employed to perform, the jury was instructed that:

> [A]n employee's act may be within the scope of employment even though the act is willful or malicious, forbidden by the employer, or indeed consciously criminal or tortious, if the act is carried out, at least in part, with a purpose, or subjective intent, to serve the employer, and it was so similar or incidental to the conduct authorized as to be within the scope of employment.

The trial court also instructed the jury that Lafond "was a City Department Head and a City employee; and ... in these capacities, possessed the authority to supervise and discipline employees in the Welfare department."

Given these instructions, the jury reasonably could have found that the actions Lafond took against the plaintiff were of a kind she was employed to perform. There was evidence that she had "exclusive personnel authority" over her department. Her job description stated that "extensive leeway is granted for the exercise of independent judgment and initiative." Her duties included employee supervision, among other functions. Therefore, the jury could have found that conflicts over case handling, criticism of employees, management of employees and suspension of employees were actions of a kind she was employed to perform. The jury also could have reasonably found that when she took these actions, she was acting within the scope of her employment.

## B. Serving the City

The City argues that Lafond's testimony indicated that she was protecting the position of welfare commissioner. It asserts that in so acting, Lafond was not "actuated, at least in part, by a purpose to serve the employer." *Porter*, 151 N.H. at 40.

On this specific point, the jury was instructed that an "employer . . . may be responsible for his or her employee's actions if the employee was trying to some extent to serve the employer's business even though the primary motive of the employee was to benefit himself/herself or a third person."

Based upon these instructions, a reasonable juror could have found that Lafond was, at least in part, serving the City, and not the position of the welfare commissioner. The jury could have reasonably relied upon the City charter, Lafond's job description, and testimony that Lafond served the City in making this finding.

## C. No Master-Servant Relationship

The City argues alternatively that either: (a) Lafond was acting as a servant who engaged in conduct, which she was specifically not authorized to do; or (b) she had the power to ignore the City's directions because it had no right to control her. The City argues that, in either case, there was no basis for respondeat superior liability because Lafond was not in a master-servant relationship.

Based upon the exhibits and testimony, the jury could reasonably have found that Lafond was authorized to supervise and that her retaliation was an abuse of that legitimate supervisory power. Supervision was a kind of work she was expected to perform. Again, the City charter, Lafond's job description, and testimony relative to her supervisory power are evidence from which the jury could have drawn such reasonable conclusions.

The jury could also reasonably have found that the City did and could control Lafond. There was evidence that the City removed Lafond from her office in an attempt to ameliorate the situation. There was also evidence that the City ensured that Lafond suspended the plaintiff according to its standards, requiring her to redraft the letter of suspension and increase the penalty from one day to one week. The jury could reasonably have found that this was exercise of control over Lafond by the City.

In summary, a rational jury could have found that Lafond's conduct fell within the scope of her employment because: (1) it was of the kind she was employed to perform; (2) it occurred substantially within the authorized time and space limits; and (3) it was actuated, at least in part, by a purpose to serve the employer. *Porter*, 151 N.H. at 40. Based upon

this record, we hold, therefore, that the trial court did not err by denying the motion for a directed verdict.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.