Merrimack
No. 2006-404

### BUKK G. CARLETON

v.

### EDGEWOOD HEIGHTS CONDOMINIUM OWNERS' ASSOCIATION

Argued: June 20, 2007
Opinion Issued: November 8, 2007

*Decato Law Office,* of Lebanon (*R. Peter Decato* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Scott H. Harris* and *Kristin M. Yasenka* on the brief, and *Mr. Harris* orally), for the defendant.

HICKS, J. The defendant, Edgewood Heights Condominium Owners' Association, appeals an order of the Superior Court (*McGuire,* J.) granting summary judgment in favor of the plaintiff, Bukk G. Carleton. We reverse and remand.

The trial court found the following: Edgewood Heights Condominium Owners' Association was formed in December 1986 and consists of 120 units in three different styles: "garden" or apartment style, townhouse style and single-family home style. The plaintiff owns fourteen of the

garden-style units. In June 2003, mold was discovered in the "attic spaces" above numerous townhouse units. The defendant decided that the necessary repairs were beyond what individual unit owners would normally be responsible for and that the space qualified under the condominium declaration as "limited common area." The defendant convened a properly-noticed meeting for the purpose of levying a special assessment on every unit in the association to pay for the remediation. The plaintiff refused to pay the special assessment on his units and brought suit in district court challenging the defendant's authority under the condominium declaration to levy the special assessment. The defendant counterclaimed to collect the assessment and also sought a declaratory judgment that its board of directors had properly interpreted the declaration when it decided that costs should be borne by the entire association and not just the individual owners of affected units. The case was removed to superior court where the plaintiff was granted a voluntary non-suit with prejudice with respect to his claims and the parties agreed that the defendant's claims would be decided on motions for summary judgment.

On summary judgment, the plaintiff argued that the attic space above a townhouse unit is part of the individual unit, making the costs of repair to that space the responsibility of the unit owners. The defendant, on the other hand, maintained that such attic spaces are limited common areas and that all unit owners, including the defendant, were properly subject to assessment for the remediation of mold in such spaces. The trial court found that the attic spaces were not limited common areas and therefore ruled "that the Board acted illegally in assessing [the plaintiff] for remediation" of mold therein. This appeal followed.

In acting upon a motion for summary judgment, the trial court is required to construe the pleadings, discovery and affidavits in the light most favorable to the non-moving party to determine whether the proponent has established the absence of a dispute over any material fact and the right to judgment as a matter of law. *Porter v. City of Manchester*, 155 N.H. 149, 153 (2007). An issue of fact is material if it affects the outcome of the litigation. *Id.* In reviewing the grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Id.*

■ "As is the case with any contract, the interpretation of a condominium's declaration is a question of law, which we review *de novo*." *Nordic Inn Condo. Owners' Assoc. v. Ventullo*, 151 N.H. 571, 575 (2004).

> When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the

circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.

*Ryan James Realty v. Villages at Chester Condo. Assoc.*, 153 N.H. 194, 197 (2006) (quotation omitted).

The defendant contends that the attic space is common area because it lies outside the perimeter of an individual unit, as defined in the declaration of condominium. Under both the terms of the declaration and the New Hampshire Condominium Act, limited common area is a subset of the common area. Declaration, Article 1-107; RSA 356-B:3, XX (1995). The declaration defines common area to "mean[] all that portion of the Condominium, other than the Units." Declaration, Article 1-107. Thus, if the attic spaces are not part of a unit, they are common area.

Article 2-301 of the declaration defines the horizontal boundaries of the townhouse units as follows:

(a) The unfinished or undecorated interior surfaces of the lower most basement floor.

(b) The unfinished or undecorated interior surfaces of the upper most ceiling.

Article 2-301 further provides that "[a]ll doors and windows serving the Townhouse Unit, and all lath, wallboard, plaster, paneling, tiles, wallpaper, paint, finished flooring and any other materials constituting part of the finished surfaces in the Townhouse Unit are part of the Townhouse Unit." The defendant argues that "the Declaration makes specific reference to the finished ceiling of the townhouse unit as delimiting the individually owned unit, with the space above the finished ceiling constituting 'common area' or, more particularly in this instance, 'limited common area.'" According to an affidavit submitted to the trial court, the attic space does not have a ceiling. Rather, "[t]he upper surface of the attic space is the underside of the roof itself." Therefore, the defendant argues, "the upper most finished ceiling of the individually owned townhouse unit would have been below the lower most portion of the unfinished attic space."

The trial court rejected this same argument, stating that the defendant "apparently concludes that a 'ceiling' must be finished which contradicts the definition contained in the Declaration of an 'unfinished ... interior of the upper most ceiling.'" We disagree with the trial court's reading of the declaration. The issue is not whether a ceiling must be finished or unfinished, but whether the attic spaces have a ceiling at all. The most relevant dictionary definition of "ceiling" is "the overhead *inside lining* of

a room; the underside of the floor above." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 358 (unabridged ed. 2002) (emphasis added). We read the affidavit's description of "[t]he upper surface of the attic space" as being "the underside of the roof itself" to mean that the overhead surface of the attic spaces consists of the exposed framing that supports and/or comprises the roof, such as beams, rafters, etc. Thus, there is no "inside lining" of finished or unfinished material (such as drywall) that would comprise a ceiling. Accordingly, the ceiling below the attic space must be the uppermost ceiling, and the upper boundary, of an individually owned townhouse unit.

■ Other declaration provisions support the conclusion that the attic spaces are limited common area rather than part of the individual units. Articles 2-500 through 2-502 provide:

> *Description of Limited Common Area.* There is appurtenant to some of the Units Limited Common Areas which are limited to the exclusive use of the Owner or Owners of the Unit or Units to which they are appurtenant:
>
> . . . .
>
> The foundations, column girders, *beams and supports, and roof* of said buildings containing the Townhouse Units . . . .

(Emphasis added.) As the beams, supports and roof are defined to be limited common area, they cannot also be part of a unit and therefore cannot constitute a "ceiling" in a unit. Accordingly, we reject the plaintiff's argument that "the underside of the roof qualifies as a ceiling." We also conclude that the trial court's ruling to the same effect was erroneous.

The defendant asks us to answer a second question, and, presuming an affirmative response, to remand and instruct the trial court to enter summary judgment in its favor. Specifically, once it has been determined that the attic space in a townhouse unit is limited common area, the next question is whether the remediation of mold therein is the responsibility of the owner of the unit to which the space is appurtenant or of all the unit owners collectively. The defendant asserts that "[t]he declaration draws a distinction between ordinary maintenance and upkeep of limited common area versus the repair of that same space and imposes the burden of the former upon the adjacent unit owner, while the latter remains the responsibility of the Association as a whole." Thus, the pertinent question is "whether [the mold remediation] constituted maintenance or a repair."

Because the trial court found that the attic spaces were not limited common area, it never reached this question. We decline to address it without benefit of an initial determination by the trial court.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, J., concurred; GALWAY, J., with whom DUGGAN, J., joined, dissented.

GALWAY, J. dissenting. Because I disagree with the majority's interpretation of the term "ceiling," I respectfully dissent.

"As is the case with any contract, the interpretation of a condominium's declaration is a question of law, which we review *de novo.*" *Nordic Inn Condo. Owner's Assoc. v. Ventullo,* 151 N.H. 571, 575 (2004).

> When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.

*Ryan James Realty v. Villages at Chester Condo. Assoc.,* 153 N.H. 194, 197 (2006) (quotation omitted).

The majority concludes that the uppermost surface of the attic space cannot constitute a ceiling for purposes of establishing a townhouse unit's boundary because there is no "inside lining." I disagree. In order to reach this conclusion, the majority discounts the attic's existing uppermost interior surface, the underside of the roof, and requires the use of some other material, such as drywall, to line the space. I do not believe such additional material is necessary to constitute a ceiling. Along with the "interior lining" definition used by the majority, WEBSTER'S defines "ceiling" as "woodwork lining the roof . . . . [and] an uppermost surface of a cavity or chamber." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 358 (unabridged ed. 2002). These definitions do not define ceiling solely in terms of what the surface is comprised of, as the majority does, but considers its position as the uppermost surface of a particular area. My interpretation is also supported by the condominium declaration's definition of a unit's boundary, which specifically allows an unfinished surface to serve in this capacity. Therefore, I believe that the underside of the roof directly above the attic space would constitute a "ceiling."

Article 2-301 of the condominium declaration establishes the "horizontal boundary" of each townhouse unit. The record here does not demonstrate

412

whether the attic space in question is in fact horizontal, such that the attic's ceiling would serve as the unit's horizontal boundary. However, this determination is irrelevant under the majority's interpretation of ceiling. Applying the majority's interpretation, the attic's uppermost surface could never constitute a ceiling, even if it was in a horizontal position, because the surface does not include some material beyond the interior of the roof. I believe such an outcome is incorrect, as it improperly focuses on the material, rather than the position, of the uppermost interior surface. For this reason, I respectfully dissent.

DUGGAN, J., joins in the dissent.