**In re WESTERLY HOSPITAL.**

**No. 2007–363–Appeal.**

Supreme Court of Rhode Island.

Jan. 7, 2009.

Aaron Weisman, Providence.

Timothy Dodd.

### ORDER

John S. Remington, Jr. (Remington), appeals from a Superior Court order authorizing the disclosure of his medical records pursuant to a provision of the Confidentiality of Health Care Communications and Information Act, G.L. 1956 § 5–37.3–6.1. This case came before the Supreme Court for oral argument on December 8, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, the appeal is denied and dismissed.

### I

### Facts and Travel

On September 18, 2006, in Stonington, Connecticut, Remington crashed his motorcycle into the back of another vehicle after leaving a party at Misquamicut Beach in Westerly, Rhode Island. The accident rendered Remington unconscious, and police officers who responded to the scene did not have the opportunity to interview him. Police officers did notice, however, the odor of an alcoholic beverage.

As a result of injuries he sustained during the accident, Remington was transported by ambulance to Westerly Hospital in Westerly, Rhode Island. There, he subsequently underwent blood tests and X-rays as part of his treatment.

At the time of the accident, Remington had been accompanied by his friend, Ginger Coon, who was operating her own motorcycle and who was not involved in the collision. The next day, on September 19, 2006, Ms. Coon appeared at the Stonington Police Department, where she provided a voluntary statement acknowledging that she and Remington had "had a couple of beers" before leaving the party. Suspecting that he had operated his motorcycle under the influence of alcohol in violation of Connecticut law, Stonington police opened a criminal investigation. In an effort to ascertain Remington's blood-alcohol level at the time of the accident, Stonington police sought to obtain the results of the blood tests that had been performed on him; the records reflecting those results were maintained by Westerly Hospital. In this endeavor, Stonington police enlisted the support of the Rhode Island Attorney General.

In turn, the Attorney General attempted to obtain the records pursuant to § 5–37.3–6.1. On June 29, 2007, the Attorney General filed a miscellaneous petition in the Rhode Island Superior Court seeking the disclosure of Remington's medical records maintained by Westerly Hospital pertaining to treatment rendered to him on or about September 18, 2006. The Attorney General also served a subpoena *duces tecum* on the keeper of records at Westerly Hospital directing that person to appear before the Superior Court with Remington's medical records.[1] In his miscellane-

---

1. There is no dated return of service docu- ment in the record indicating the precise date

ous petition, the Attorney General noted that he had issued the subpoena under Rule 17(c) of the Superior Court Rules of Criminal Procedure.

Thereafter, the Attorney General served a copy of the subpoena on Remington, along with a notice informing him of his right to move to quash it within twenty days in accordance with § 5–37.3–6.1.[2] On July 19, 2007, Westerly Hospital filed a motion to quash the subpoena. Later, on August 6, 2007, Remington filed his own motion to quash the subpoena.

An evidentiary hearing regarding the subpoena and the motions to quash was held in the Superior Court on August 14 and 15, 2007.[3] The motion justice denied Remington's motion to quash after finding that it was untimely, but nevertheless allowed him to "participate," over the Attorney General's objection, in the evidentiary hearing and arguments on Westerly Hospital's motion to quash. Remington proceeded to argue that Rule 17(c) was an improper procedural vehicle for the Attorney General to use to obtain information on behalf of Connecticut for potential prosecution there. The Attorney General confessed error in citing to Rule 17(c), but maintained that the subpoena was proper under Rule 45 of the Superior Court Rules of Civil Procedure and § 5–37.3–6.1. The motion justice denied Westerly Hospital's motion to quash, ruling that the subpoena was both procedurally proper and substantively valid under § 5–37.3–6.1. After reviewing the records *in camera*, the motion

justice directed that they be resealed and made part of the Superior Court case file available to the Attorney General, who in turn could disseminate them for law enforcement purposes.

At Remington's request, the motion justice granted a stay until August 23, 2008, to enable him to appeal and to seek a stay from this Court. An order encompassing the motion justice's decision was filed on August 20, 2007. Remington filed a timely notice of appeal, on August 20, 2007, but did not petition for a stay from this Court. Westerly Hospital has not appealed the motion justice's order. On August 23, 2007, the Superior Court allowed delivery of the medical records to the Attorney General, who subsequently turned them over to the Stonington Police Department. Thereafter, Remington was charged criminally in Connecticut with the illegal operation of a motor vehicle under the influence of alcohol. At the time of this decision, the Connecticut case is still pending.

## II

### Analysis

Remington does not appeal the motion justice's ruling that his motion was untimely. Rather, he challenges the motion justice's determination, with respect to Westerly Hospital's motion to quash, that the subpoena was procedurally proper. He contends that Rule 17(c) was the wrong procedural vehicle through which to obtain the medical records because the hearing below was not a criminal proceeding. He

---

on which the Attorney General served the subpoena on Westerly Hospital.

**2.** The record does not indicate exactly when the Attorney General served a copy of the subpoena and notice on Remington. The Attorney General represented to the motion justice that they were served on July 6, 2007, but there is no dated return of service document in the record.

**3.** Three witnesses testified for the Attorney General at the evidentiary hearing: Ginger Coon and Officers Joseph McDermott and Michael Peckham of the Stonington Police Department. Oral argument by the parties on the merits of the case preceded and followed the witness testimony.

also submits that neither Rule 17(c) nor Rule 45 provides a basis for the Attorney General to obtain records within Rhode Island to be shipped out of state for a prosecution in another jurisdiction. Instead, he suggests that Connecticut should have obtained the records through another procedural vehicle, such as the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, G.L. 1956 § 12–16–3. Finally, Remington argues that under § 5–37.3–6(b)(6)—a provision of the Confidentiality of Health Care Communications and Information Act separate and distinct from § 5–37.3–6.1—any blood tests performed on him at Westerly Hospital are not subject to disclosure because they were not performed at the direction of a law enforcement official.

## A

### Justiciability of Appeal

The Attorney General argues that this appeal should be dismissed as moot because Remington's medical records already have been provided to the Attorney General and to the State of Connecticut. Because justiciability is a threshold issue, we must address it before considering the merits of Remington's appeal.

Generally, this Court will not review moot cases. If a decision by this Court "would fail to have a practical effect on the existing controversy, the question is moot, and we will not render an opinion on the matter." *See City of Cranston v. Rhode Island Laborers' District Council Local 1033*, 960 A.2d 529, 533 (R.I.2008); *see also Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence*, 754 A.2d 89, 90, 91 (R.I.2000) (holding that the plaintiffs' claim was moot because the public works project that was the subject of the dispute had been completed); *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I. 1980) ("As a general rule we only consider

cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions."). Additionally, "a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Unistrut Corp. v. State Department of Labor and Training*, 922 A.2d 93, 99 (R.I.2007) (quoting *School Committee of Johnston v. Santilli*, 912 A.2d 941, 942 (R.I.2007) (mem.)).

We recognize a narrow exception to the mootness doctrine for cases "of extreme public importance, which [are] capable of repetition but which [evade] review." *City of Cranston*, 960 A.2d at 533 (quoting *Arnold v. Lebel*, 941 A.2d 813, 819 (R.I.2007)). Cases of extreme public importance involve "important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." *Cicilline v. Almond*, 809 A.2d 1101, 1106 (R.I.2002) (quoting *Associated Builders & Contractors of Rhode Island, Inc.*, 754 A.2d at 91).

In the case at hand, a decision by this Court on the merits would fail to have a practical effect on the underlying controversy. *See City of Cranston*, 960 A.2d at 533. After Remington failed to seek a stay with this Court despite being given the opportunity to do so by the motion justice, his medical records were released to the Attorney General, who in turn disseminated them to law enforcement authorities in Connecticut. Connecticut since has filed criminal charges against Remington, and a criminal proceeding is pending in that state.

Now that the medical records are in Connecticut, this Court lacks the authority to tell our sister state what to do with them. Remington argues that a decision by this Court holding that the motion jus-

tice erred in releasing the medical records could affect their admissibility in the Connecticut proceeding, and thus, the disposition of that case. However, he cites to no Connecticut law, rule of evidence, or other authority that would bar the admissibility of the records simply because a court in another state determined that they were released improperly. Moreover, regardless of what we decide, the Connecticut court still could admit or reject the records for an entirely different reason. Indeed, even if the Connecticut court agrees with Remington and holds the records inadmissible by virtue of their improper release, it nevertheless might admit the records through a different procedural vehicle.

Because a decision by this court on the merits will not have a practical effect on the underlying controversy, the appeal is moot. *See City of Cranston*, 960 A.2d at 533. Furthermore, because Remington challenges only the procedural vehicle through which his records were obtained, this case does not fall under the extreme public importance exception to the mootness doctrine. *See Cicilline*, 809 A.2d at 1106. Thus, we decline to consider its merits.

For the foregoing reasons, we deny and dismiss Remington's appeal.