TOWN HOUSES AT BONNET
SHORES CONDOMINIUM
ASSOCIATION

v.

Michael A. LANGLOIS.

No. 2011–181–Appeal.

Supreme Court of Rhode Island.

June 22, 2012.

Neil P. Philbin, Esq., Peace Dale, for Plaintiff.

Timothy J. Morgan, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The defendant, Michael A. Langlois, appeals from a Superior Court declaratory judgment entered in favor of the plaintiff, Townhouses [1] at Bonnet Shores Condominium Association (association). The judgment decreed that a lease agreement that the defendant had entered into violated the "Declaration of Condominium of Townhouses at Bonnet Shores Condominiums" (declaration). The defendant asserts on appeal that the declaration is ambiguous and that, therefore, the trial justice incorrectly interpreted it to exclude the lease agreement. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The defendant has owned condominium unit #3 (the unit) in the Townhouses at Bonnet Shores Condominiums, located at 1029 Boston Neck Road in the Town of Narragansett, since 2003. He has never resided in the unit, but rather has rented it out to tenants. On December 19, 2008, defendant entered into a lease agreement with Severance McLaughlin. Although this lease agreement terminated on May 1, 2009, Mr. McLaughlin has remained in possession of the unit under a month-to-month tenancy.[2] In August 2009, defendant executed a lease agreement with Jacqueline Steinback, which ran from September 1, 2009, to November 31, 2009, at which time the lease "extend[ed] [to a] month to month" tenancy.[3] Ms. Steinback also continues to reside in the unit.

In August 2010, based on the condominium documents, defendant submitted a proposed lease agreement between himself and Zheng Fang to the "Executive Board of Townhouses at Bonnet Shores Condominiums" (board). Mr. Fang's lease agreement was to start on September 1, 2010, and terminate on May 1, 2011. On August 20, 2010, however, the board notified defendant "by email that based on the two active lease agreements with McLaughlin and Steinback, the additional lease agreement with Zheng Fang would be in violation of Article V[, section 5.2(b) ] of the [d]eclaration," [4] and that therefore,

---

1. We note that the case caption uses the spelling, "Town Houses," as it was used in the plaintiff's complaint for declaratory judgment; however, for accuracy's sake, we will use the spelling, "Townhouses," as it is used within the "Declaration of Condominium of Townhouses at Bonnet Shores Condominiums" and throughout the record.

2. There is a "Holdover by Tenant" clause in Mr. McLaughlin's lease agreement, which states in part:

"Should Tenant remain in possession of the [unit] with the consent of Landlord after the expiration of the Term of this Lease, a new tenancy from month to month shall be created which shall be subject to all the terms and conditions of this Lease, but shall be terminable on thirty (30) days by either party or longer notice if required by law."

3. Ms. Steinback's lease agreement contains the same holdover clause as is in Mr. McLaughlin's lease agreement.

4. Article V, section 5.2 of the declaration, entitled "Leases," states:

"*Leases.* No Unit Owner may rent or lease its Unit, or renew or extend the term of a lease, except on the following terms and conditions:

the board "would not approve [the third] prospective lease agreement." Despite the lease not being approved, Mr. Fang and his wife moved into the unit. As a result, four people were residing in the unit simultaneously under three separate tenancies.[5]

On September 15, 2010, the association filed a declaratory judgment action in the Superior Court, asking that the court declare that Mr. Fang's lease agreement violated the declaration because it established a third tenancy in the unit within one year. A bench trial took place on February 14, 2011, at which Christopher Catanzaro, president of the association and the board, testified that the board determined that

"the third lease was in violation of [the] condominium bylaws and declaration[, and] that [the board] had to deny * * * the lease to Mr. Fang."[6] Mr. Catanzaro also explained that a desire "to avoid transient tenants"—as well as "parking restrictions" because of the "small area" on which the condominiums sit—formed the rationale for the declaration's "two leases per year" clause.

The trial justice issued a bench decision on February 17, 2011, at which time he applied the rules of contract construction. In so doing, he interpreted the sentence within the declaration that states that: "[n]o [u]nit may be leased or rented more

> "a. All tenancies must be in writing and shall be for a term of not less than six (6) months.
>
> "b. No Unit may be leased or rented more than two (2) times in each calendar year.
>
> "c. The above provisions (a) and (b) may not be amended or modified in any manner without the prior written consent of the Zoning and Planning Board of Review of the Town of Narragansett.
>
> "d. The above provisions (a), (b) and (c) shall be binding on [the owner of the Townhouses at Bonnet Shores Condominiums], its successors and assigns, and upon all Unit Owners, and said provisions may be enforced by [such owner], its successors and assigns, the Association, any of the Unit Owners or by the Building Inspector of the Town of Narragansett.
>
> "e. All leases shall be subject to the terms and conditions of the Declaration, the Association Bylaws, and the Association Rules and Regulations. All prospective tenants of a Unit must be approved by the Executive Board, which approval shall not be unreasonably withheld by the Executive Board. If the Executive Board does not act within thirty (30) days after the date on which it receives the name(s) of the prospective tenant(s), such financial information as the Executive Board may reasonably require, and the proposed lease between the Unit Owner and the prospective tenant, then the Executive Board shall be deemed to have approved the proposed tenancy.

> "f. All executed and approved leases shall be submitted to the Executive Board within ten (10) days of their execution.
>
> "No more than two (2) persons per bedroom may occupy a unit. For the purposes of this occupancy limitation, children under the age of two (2) years shall not be counted in the computation.
>
> "Even if a lease satisfies the foregoing provisions, the Executive Board may terminate such lease if after the Executive Board notifies the tenant that the tenant has violated the terms of this Declaration (including the ByLaws and the Rules and Regulations), the tenant continues or fails to correct such violation within a reasonable period of time set by the Executive Board. Any costs, including reasonable attorneys' fees incurred by the Executive Board in connection with approving or terminating a lease, shall constitute an additional assessment pursuant to Section 8.6 hereof against the Unit being leased."

5. During his oral argument before this Court, defendant stated that Mr. Fang and his wife no longer reside in the unit.

6. The plaintiff offered the declaration and its bylaws into evidence, and defendant objected on grounds that the copies presented were "[n]ot properly authenticated." The defendant's objection was overruled, and the documents were entered as full exhibits.

than two (2) times in each calendar year" to mean that Mr. "Fang['s] lease would be a third * * * 'rental or lease' within the calendar year of 2010." The trial justice found this to be "contrary to [s]ection 5.2(b) when the sentence is read as a whole." The trial justice concluded:

"The defendant's contract with tenant, Zheng Fang, violated provisions of the declaration * * *, therefore, the plaintiff's request for declaratory judgment is granted to that extent. I recognize that this is a hardship for [defendant,] but it was a fully disclosed condition prior to his purchase of the condominium. I know that others are renting—two others are renting and one is leasing, inferring that they're all consistently living with each other and somehow may be sharing expenses * * * of this unit, but * * * that's not what the declaration says. It means what it says and it says what it means, and not to be rented * * * more than two times in each calendar year."

A judgment was entered for plaintiff on February 28, 2011, which defendant timely appealed on March 1, 2011.

## II

### Standard of Review

■■■ "A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." *Downey v. Carcieri*, 996 A.2d 1144, 1149 (R.I.2010) (quoting *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority*, 951 A.2d 497, 502 (R.I.2008)). "When deciding an action for declaratory judgment, a Superior Court justice makes all findings of fact without a jury." *Id.* "Such factual findings are afforded great weight by this Court, 'and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was oth-

erwise clearly wrong.' " *Id.* (quoting *Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 273 (R.I.2004)). "A trial justice's findings on questions of law, however, are reviewed *de novo*." *Id.* (quoting *Fleet National Bank*, 851 A.2d at 273).

## III

### Discussion

### A

### Mootness

■■■ To the extent that this appeal pertains to the Superior Court judgment declaring that Mr. Fang's lease agreement violates the declaration, we are of the opinion that the judgment has been rendered moot by defendant's admittance at oral arguments before this Court that Mr. Fang and his wife no longer reside in the unit. "An appeal is moot when 'a decision by this [C]ourt on the merits [would] not have a practical effect on the underlying controversy.' " *Campbell v. Tiverton Zoning Board*, 15 A.3d 1015, 1021 (R.I.2011) (quoting *In re Westerly Hospital*, 963 A.2d 636, 639 (R.I.2009) (mem.)). The underlying controversy in this case was whether "[d]efendant's lease agreement with his third tenant [Mr.] Fang [was] in violation of the [d]eclaration." When Mr. Fang subsequently moved out of the unit, however, the underlying controversy was eradicated. Therefore, "a decision by this [C]ourt on the merits [would] not have a practical effect," which leaves the underlying controversy moot before this Court. *Id.* (quoting *In re Westerly Hospital*, 963 A.2d at 639).

■■■ The defendant, however, suggests that we should overlook mootness in this case because the issue of whether the board has the authority to not approve a lease agreement between defendant and a potential third tenant is capable of repeti-

tion and easily can evade review. "As a general rule, [this] Court will 'only consider cases involving issues in dispute; [it] shall not address moot, abstract, academic, or hypothetical questions.'" *Campbell*, 15 A.3d at 1022 (quoting *H.V. Collins Co. v. Williams*, 990 A.2d 845, 847 (R.I.2010)). Further, we have stated that we "will not review a case in which the parties no longer have an articulable stake in the outcome." *H.V. Collins Co.*, 990 A.2d at 848. "However, '[t]his Court will review an otherwise moot case only when the issues are of *extreme* public importance, which are capable of repetition but which evade review.'" *Campbell*, 15 A.3d at 1022 (quoting *H.V. Collins Co.*, 990 A.2d at 848). "Issues of extreme public importance usually implicate important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." *Id.* (quoting *H.V. Collins Co.*, 990 A.2d at 848). This, nevertheless, is "a narrow exception to the mootness doctrine." *Id.* (quoting *In re Westerly Hospital*, 963 A.2d at 638).

Here, although the issue of the validity of Mr. Fang's lease agreement is moot, the parties to this case have a continuing, personal stake in the controversy because defendant still wishes to rent the unit to a third tenant, while the association still intends to deny any such rental or lease agreement. The plaintiff has owned the unit as a rental property, and as such, the instant appeal centers on a "matter[ ] concerning a person's livelihood." *Campbell*, 15 A.3d at 1022 (quoting *H.V. Collins Co.*, 990 A.2d at 848); *see* Black's Law Dictionary 945 (7th ed.1999) (defining "livelihood" as "[a] means of supporting one's existence, esp. financially"). Thus, we deem that this case falls within one of the narrow exceptions to the mootness doctrine. We shall, therefore, address the central issue of whether defendant would violate the declaration, namely section 5.2, were he to enter into, renew, or extend three separate rental agreements within a single calendar year.

## B

### Interpretation of the Declaration

The defendant notes that the underlying intent of section 5.2 of the declaration is to "prevent multiple, short-term, transient leases within a calendar year,"[7] and he argues that, because Mr. McLaughlin's and Ms. Steinback's lease agreements "are not transient and comply with the requirements of [s]ection 5.2," the hearing justice erred in his determination that a third lease agreement violated the declaration. To support his contention, defendant asserts that section 5.2(b) is ambiguous, and he then attempts to dissect that section to enable a reading and interpretation of the declaration in his favor. We shall, therefore, address the general issue of whether defendant would violate the declaration—specifically, section 5.2—if, having entered into two rental agreements in a single calendar year, he were to enter into a third rental agreement in that same year.

This Court has stated that when the administration of a condominium complex is at issue, "the condominium statutes and the declaration control[ ] the relationship between the parties." *Artesani v. Glenwood Park Condominium Association*, 750 A.2d 961, 963 (R.I.2000); *see also* G.L.1956 § 34–36–8 ("Each unit owner shall comply strictly with the covenants, conditions, and

---

7. The defendant argues that sections 5.2(a) and (b) address "who" can enter into a lease agreement, while section 5.2(f) addresses "how many" people can occupy the unit at the same time. He suggests that these sections must be read together to further the drafter's intent of preventing transient tenancies.

restrictions as set forth in the declaration * * * and with the bylaws and * * * with the administrative rules and regulations drafted pursuant thereto."); § 34–36–15 ("The administration of every property shall be governed by [the] bylaws, which may either be embodied in the declaration or in a separate instrument.").

In reviewing a declaration, we find it appropriate to apply the laws of contract construction.[8] As is the case in contract construction, whether a condominium declaration is ambiguous is a question of law that this Court will review on a *de novo* basis. *See Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co.*, 11 A.3d 1078, 1083 (R.I.2010). In determining whether a declaration is ambiguous, "we give words their plain, ordinary, and usual meaning," and we will depart from the declaration's literal language only if we find ambiguity. *Id.* The declaration will be considered by this Court in its entirety and we will not "establish ambiguity by viewing a word in isolation or by taking a phrase out of context." *Id.* (quoting *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990)). We also will "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a [declaration] where none is present." *Id.* (quoting *Mallane v.*

*Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I.1995)).

Furthermore, in interpreting a declaration, the subjective intent of the parties should not be considered; rather, this Court looks only to the intent expressed by the language of the declaration. *See Bliss Mine Road Condominium Association*, 11 A.3d at 1083–84. If the declaration is "reasonably susceptible of different constructions," it is ambiguous. *Id.* at 1084 (quoting *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). We will not find ambiguity in a declaration, however, simply because the parties disagree about its proper interpretation. *See Federal Deposit Insurance Corp. v. Singh*, 977 F.2d 18, 22 (1st Cir.1992).

In reviewing the declaration at issue in this case, we observe that section 5.2(b) of the declaration clearly states that a unit owner may not enter into, renew, or extend a rental or lease agreement *unless* specific "terms and conditions" are met. These "terms and conditions" require, in part, that the tenancy must be in writing, that it must be for a minimum of a six-month term, that the unit cannot be leased or rented more than two times in a single calendar year, that any prospective tenan-

---

8. We note that other jurisdictions generally have applied the rules of contract construction when interpreting condominium declarations. *See, e.g., Harbour Pointe, LLC v. Harbour Landing Condominium Association, Inc.*, 300 Conn. 254, 14 A.3d 284, 288 (2011) (stating that "the [condominium] declaration operates in the nature of a contract, in that it establishes the parties' rights and obligations," and the court then applied "the rules of contract construction to the interpretation of [the declaration]" (quoting *Canterbury Heights Condominium Association, Inc. v. Local Land Development, LLC*, 273 Conn. 724, 873 A.2d 898, 904 (2005))); *Cusimano v. Port Esplanade Condominium Association,* *Inc.*, 55 So.3d 931, 936 (La.Ct.App.2011) ("The rules of contract interpretation apply to the interpretation of a condominium declaration."); *Carleton v. Edgewood Heights Condominium Owners' Association*, 156 N.H. 407, 938 A.2d 120, 122 (2007) (comparing the interpretation of a condominium's declaration to the interpretation of a contract, both of which are questions of law and which the court reviews *de novo* ); *Bundren v. Holly Oaks Townhomes Association, Inc.*, 347 S.W.3d 421, 435 (Tex.Ct.App.2011) (stating that, under a condominium regime, a declaration establishes property and "forms a contract between the homeowners association and the condominium unit owners").

cy must be approved by the board, and that the total number of tenants residing in the unit must not exceed two persons per the number of bedrooms within that unit. We are of the opinion that there is no ambiguity in any of these provisions, and we thus give the words within these provisions their "plain, ordinary, and usual meaning." *Bliss Mine Road Condominium Association,* 11 A.3d at 1083.

Looking to the plain meaning of the words within the declaration, we deem that it unequivocally states that a unit may not "be leased or rented more than two (2) times in each calendar year." We read this sentence to mean exactly what it says; the unit may not be rented more than two times in a single calendar year, whether that be consecutive or concurrent. Currently, defendant holds individual, month-to-month tenancies with both Mr. McLaughlin and Ms. Steinback. Clearly, these are two separate rentals and, as such, defendant has reached the maximum number of annual rentals that are allowed under the declaration. Therefore, we agree with the trial justice that a third lease agreement or rental arrangement would violate section 5.2 of the declaration because defendant already has rented the unit twice within a single calendar year.

## C

### The Defendant's Other Claims on Appeal

The defendant raises additional issues on appeal that we deem meritless because they were not sufficiently developed in his written submissions to this Court. *See State v. Chase,* 9 A.3d 1248, 1256 (R.I.2010) (reaffirming that "[s]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that is-

sue" (quoting *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1131 n. 1 (R.I.2002))). Also, some of the additional issues were not raised in the Superior Court and are, therefore, considered waived on appeal under this Court's "raise-or-waive" rule. *See State v. Brown,* 9 A.3d 1240, 1245 (R.I.2010) (stating that "a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court" (quoting *State v. Bido,* 941 A.2d 822, 829 (R.I. 2008))).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.